UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION - FLINT

IN RE:

BRUCE A. MCCONNAUGHHAY,   Case No. 11-32155-dof
                          Chapter 7 Proceeding
Debtor.                   Hon. Daniel S. Opperman
_____/

OPINION REGARDING TRUSTEE'S OBJECTION
TO DEBTOR'S AMENDED CLAIM OF EXEMPTIONS

Introduction

Samuel D. Sweet, the Chapter 7 Trustee, objected to the Debtor's amended claim of exemptions of an interest of the Debtor in an inheritance from the Estate of Mayme M. McConnaughhay. The Debtor timely filed a reply to the Trustee's objection and the Court conducted an evidentiary hearing on June 5, 2012. After conclusion of proofs, the parties were allowed to file briefs in support of their respective positions.

This case requires the Court to construe the Will of Ms. McConnaughhay and to determine whether the Debtor failed to disclose a transfer of a part of his interest created by that Will. The Debtor claims that he transferred part of his interest in his mother's estate to avoid the costs of probate and to allow his other siblings an equal share in his mother's estate. The Trustee claims that the Debtor intentionally transferred a part of his interest in the estate to avoid creditors and that he failed to disclose that interest. As such, the Trustee claims that the Debtor, by failing to disclose the transfer of this interest in his Statement of Financial Affairs, forfeits the right to claim an exemption in this property.

1

<u>Facts</u>

The Debtor's parents are Luther and Mayme McConnaughhay, and he has two brothers, George and Mark. He also has a step-sister, Shirley Smith. His father, Luther, had children from a previous marriage named Gene McConnaughhay, Billy Joe McConnaughhay, Betty Lou Ross, and Mary Oden.

Mayme McConnaughhay met with her attorneys to prepare her Last Will and Testament. Afterward, her attorneys prepared her Last Will and Testament, which she signed and initialed on June 24, 1992. Pertinent provisions of this Last Will and Testament include:

ARTICLE I
FAMILY

     Section 1. My spouse is Luther R. McConnaughhay. Any reference in this will to my spouse is to her. [sic]
     Section 2. My children are Bruce A. McConnaughhay, George M. McConnaughhay, and Mark F. McConnaughhay.
     Section 3. I also have a daughter, Shirley A. Smith.
     Section 4. My spouse's children by a previous marriage are Gene A. McConnaughhay, Billy Joe McConnaughhay, Betty Lou Ross and Mary E. Oden.

ARTICLE II
DEFINITIONS

     Section 1. Unless the context clearly requires otherwise, the terms "my child," "my children," "child of mine," or "children of mine" shall mean those persons set forth in Section 2 of Article I.

. . .


ARTICLE III
APPOINTMENT OF PERSONAL REPRESENTATIVE

     I appoint my spouse as my Personal Representative to administer this will. If my spouse is unwilling or unable to act, then I appoint my daughter, Shirley A. Smith, as first alternate Personal Representative. To the extent permitted by law, the above named persons shall serve without bond.

. . .

## ARTICLE VII
## DISTRIBUTION OF RESIDUE

 Section 1. I give the residue of my estate, whether real, personal or mixed, to my spouse.
 Section 2. If my spouse does not survive me, then I direct that said property be divided into equal shares. There shall be one share for each child of mine who survives me and one share for the issue, by right of representation, of each child of mine who fails to survive me.

Luther McConnaughhay, the Debtor's father and Mayme McConnaughhay's husband, predeceased her and she died October 10, 2009. Although Mayme McConnaughhay's daughter, Shirley Smith, was appointed as the first alternate Personal Representative, Ms. Smith declined this position and the Debtor was appointed as the Personal Representative. One of the reasons Ms. Smith declined this position was that, by having the Debtor appointed as Personal Representative, the estate avoided the cost of hiring an attorney.

The Debtor, as Personal Representative, was advised by counsel that the Last Will and Testament of Mayme McConnaughhay gave the Debtor and his two brothers, George and Mark, all of his mother's estate. The Debtor and his two brothers believed that this was not consistent with their mother's wishes. Additionally, the Debtor believed that all of his siblings and half siblings were treated equally by his parents and therefore they should share equally in his mother's estate.

To that end, the Debtor and his brothers, George and Mark, signed an Agreement to Alter Shares ("Agreement") in April, 2010. This Agreement altered the shares of Ms. McConnaughhay's estate to include Shirley Smith, Gene McConnaughhay, Billy Joe McConnaughhay, Betty Lou Ross, and Mary Oden, along with the Debtor and his two brothers, George and Mark. This Agreement was filed with the Genesee County Probate Court on April 26, 2010.

3

A year and two days later, on April 28, 2011, the Debtor filed a voluntary petition seeking relief under Chapter 7 of the Bankruptcy Code. The Statement of Financial Affairs was filed on that date. Of particular interest is statement #10, which reads:

**10. Other transfers**

a. List all other property, other than property transferred in the ordinary course of the business or financial affairs of the debtor, transferred either absolutely or as security within two years immediately preceding the commencement of this case. (Married debtors filing under chapter 12 or chapter 13 must include transfers by either or both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

In response, the Debtor indicated "None".

On the same day, the Debtor exempted an anticipated inheritance in the amount of $9,282.00, specifying 11 U.S.C. § 522(d)(5) as a basis for that exemption. Subsequently, on February 29, 2012, the Debtor amended Schedule C to claim $7,700.00 as a 1/3 interest in his mother's estate. To date, the Debtor has not amended his Statement of Financial Affairs.

Judy Jacot, Gina Thorpe, and the Debtor testified at the June 5, 2012, evidentiary hearing. Collectively, their testimony is consistent as to the formation of the Will and the general belief that Mayme McConnaughhay wished to share her estate equally with all of her children. In particular, the Debtor detailed his reasons for believing that his mother wished to have all of her children share equally, and his desire to avoid family strife and additional cost to the probate estate.

<u>Jurisdiction</u>

This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 157, 28 U.S.C. § 1334, and E.D. Mich. LR 83.50. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A) (matters concerning the administration of the estate) and (B) (allowance or disallowance of exemptions from property of the estate).

4

Analysis

The parties initially ask the Court to determine if there is a patent or latent defect in the Will that would require the Court to consider additional inquiry. The Debtor cites two cases that the Court finds instructive. First, the Michigan Supreme Court in *Morrow v. Detroit Trust Co.*, 330 Mich. 635 (1951) stated:

> "In construing a will, the cardinal principle is to reach the testator's intention as disclosed by the instrument, and to give effect to the whole, so far as the working will permit, and is consistent with existing laws. To that end, the document itself is first consulted, and, if its terms, in the connection used are clear and unambiguous, the inquiry ends."

More recently, the Michigan Court of Appeals in *In re Woodworth Trust*, 196 Mich. App. 326 (1992) stated:

> "The role of the probate court is to ascertain and give effect to the intent of the testator as derived from the language of the will. Where there is no ambiguity, that intention is to be gleaned from the four corners of the instrument. A patent ambiguity exists if an uncertainty concerning the meaning appears on the face of the instrument and arises from the use of defective obscure or insensible language. A latent ambiguity exists where the language and its meaning is clear, but some extrinsic fact creates the possibility of more than one meaning."

Applying these principles to the instant case, the Will clearly defines Mayme McConnaughhay's children as Bruce A. McConnaughhay, George M. McConnaughhay, and Mark F. McConnaughhay in Article I, Section 2.

Article II, Section 1 states that the term "child of mine" means the individuals stated in Article I, Section 2. Article VII, Section 2 provides that Ms. McConnaughhay's property would be divided into equal shares for each child who survived her. This three step process cannot be clearer. The Will defined three individuals as Ms. McConnaughhay's children, and further provides that her children, as defined, would receive equal shares. This language is clear and unambiguous.

The Court has reviewed the Will carefully and finds no patent ambiguity to cause the Court to deviate from the clear reading of the Will. Moreover, the Court cannot find any latent ambiguity that would cause one to think that there is more than one meaning to the language used in the Will. In fact, the inclusion of the other children of Mayme and Luther McConnaughhay in Article I negates the possibility of any ambiguity because these individuals were listed, defined differently, and treated differently. Accordingly, this Court holds that the Last Will and Testament of Mayme McConnaughhay has no ambiguity and that her intention is clearly gleaned from the four corners of her Will. The Debtor's interest in his mother's estate, therefore, is a 1/3 interest.

The parties next ask this Court to consider whether the April, 2010, transfer by the Debtor constitutes either a fraudulent conveyance or some sort of other transfer that negates the Debtor's claim of exemption. While the parties properly focused on the intent of the Debtor in April, 2010, the Court finds that the inquiry into the Debtor's intent is not determinative of the issues before this Court. Assuming arguendo that the Debtor did not have the necessary intent to defraud creditors, and instead either believed in good faith that his mother wished to have her property divided equally among all of her children or, just as likely, that the Debtor wished to avoid costly litigation, the Court concludes that the Debtor's state of mind when he signed the April, 2010, Agreement is not material.

The Court reaches this conclusion because the Debtor failed to disclose the transfer in his Statement of Financial Affairs when he filed his bankruptcy on April 28, 2011, one year and two days after he signed the Agreement. To date, the Debtor has not filed any amendment to his Statement of Financial Affairs to explain this transfer. Even assuming arguendo that the Debtor had the best of intentions in transferring his partial interest in the estate, no reason has been given

6

regarding why the Debtor did not disclose that transfer when his case was originally filed or why the Debtor has not amended his Statement of Financial Affairs to explain the transfer.

Debtors are allowed to amend their Schedules and Statement of Financial Affairs, and these amendments are controlling absent bad faith or the concealment of property. *Lucius v. McLemore*, 741 F.2d 125, 127 (6th Cir. 1984). Here, the failure to list the transfer is evidence of concealment. Although the Debtor did disclose an interest in his mother's estate and exempted same, this partial disclosure clouds the complete 1/3 interest the Debtor could have in his mother's estate. The Court finds that the Debtor attempted to conceal his true interest in his mother's estate. The exemption, as amended, claimed by the Debtor should not be allowed under *Lucius*.

While the denial of the Debtor's exemption at first blush appears harsh, this result needs to be measured against the strong policy reasons compelling debtors to fully disclose all assets. Aside from the clear statutory requirement of a debtor to do so, the disclosure of all assets allows all interested parties the opportunity to fully understand the debtor's financial situation, and allow for, as in this case, a Chapter 7 Trustee to investigate those assets and determine if further action or liquidation of the assets is necessary. By failing to disclose a transfer that was made within two years preceding his bankruptcy filing, the Debtor frustrated the Trustee's investigation of his assets until this asset came to light at the first meeting of creditors. While the Court understands that the Debtor ultimately did disclose these assets orally, the Trustee should not have had to resort to questioning at the first meeting of creditors to uncover such an asset. This results in a waste of time and resources.

Moreover, there is no reason why the Debtor did not disclose this transfer, especially if the reason for the transfer was as altruistic as stated by the Debtor at the June 5, 2012, evidentiary

7

hearing. Instead, the failure to disclose this transfer causes one, such as the Trustee, to cast a skeptical eye as to the Debtor's true intentions. Unfortunately, this skeptical eye then looks at other assets that may or may not have been disclosed completely and accurately by the Debtor. Even though no further action may be necessary, a trustee must more thoroughly investigate an estate whenever a debtor does not fully and completely disclose assets.

Accordingly, for these reasons, the Court sustains the Trustee's objection to the amended exemptions of the Debtor. Counsel for the Trustee is directed to prepare the appropriate Order.

**Signed on September 10, 2012**

                                            **/s/ Daniel S. Opperman**
                                            **Daniel S. Opperman**
                                            **United States Bankruptcy Judge**